## EX PARTE BRANSFORD, COUNTY TREASURER OF PIMA COUNTY, ARIZONA, ETC.

No. —, Original.   Argued April 23, 1940.—Decided May 20, 1940.

---

[20] Cf. *Inland Steel Co.* v. *United States,* 306 U. S. 153, 157.

[21] *United States* v. *Illinois Central R. Co.,* 263 U. S. 515, 525, 526.

*Mr. Gerald Jones,* with whom *Mr. John Mercer Johnson* was on the brief, for petitioner.

*Mr. J. L. Gust* for David W. Ling, U. S. District Judge, respondent.

MR. JUSTICE REED delivered the opinion of the Court.

The county treasurer and ex-officio tax collector of Pima County, Arizona, moves to file a tendered petition for a writ of mandamus to be directed to District Judge Ling of the federal district court for that state. A rule to show cause has issued and the return has been made. Petitioner, a county treasurer, and other officials are defendants together with their counties, in a suit brought in the district court by the Valley National Bank in which the Bank is seeking an interlocutory and permanent injunction against the collection of certain taxes by the counties. The district judge has ruled that he will hear the case while sitting alone and petitioner contends that under § 266 of the Judicial Code he is entitled to have the case heard before three judges. Mandamus is the proper remedy.[1]

Arizona taxes shares of bank stock in the name of the shareholders. and requires the bank to pay for them.[2]

---

[1] *Ex parte Williams,* 277 U. S. 267, 269; *Stratton* v. *St. Louis Southwestern Ry. Co.,* 282 U. S. 10, 16.

[2] Revised Code of Arizona, 1928, §§ 3069–71.

Assessments are made in the first instance by county assessors, with an appeal allowed first to a county and then to a state board of equalization. The state board returns the final assessment with a levy of the rate for state purposes to the county supervisors. This body adds the several local rates and places the assessment upon the tax roll. Collection is performed by the county treasurer,[3] and the taxes collected are apportioned between state and county.[4] Where a bank is doing business in several counties the value of its stock is apportioned among the counties in accordance with the assets located in each.[5] Because other property in the state has been under-assessed the state board in 1935 ordered that bank shares be valued at 75% of capital stock, surplus and undivided profit. Assets, borrowings, deposits and other liabilities are disregarded.

The petitioner is the only defendant to apply for mandamus. As the issuance of such an order depends on the jurisdiction of the single district judge, sitting alone, over the suit pending in the district court, this is sufficient. As the issues with this petitioner in that suit include those with all other defendants, we do not need to state the issues arising with the officials of counties other than Pima. The Bank states its controversy with the petitioner arose in the following manner. The Bank had branches in several counties. It had common capital stock, a surplus and undivided profits. Also the Bank had an issue of preferred which it had sold to the Reconstruction Finance Corporation prior to the time of the 1935 assessment at the par value of $1,240,000 and which the Reconstruction Finance Corporation still owns. Taking the position that the preferred owned by the Reconstruction Finance Corporation could not be taxed,

---

[3] *Id.*, § 3110.

[4] *Id.*, § 3111.

[5] *Id.*, § 3071.

the Bank reported a total value of $524,629.50, 75% of $699,026 (the amount of its common, surplus, undivided profits and reserves), as the total taxable value of its shares, and apportioned this among the counties according to the assets there located. On this basis $139,088.80, 26.53% of its total taxable value, was apportioned to Pima County. The assessor of Pima County made an assessment of $327,590, the "actual cash value of the real and personal property" situated in Pima County. By agreement of the parties, the Bank paid the amount which under its computation was due Pima County, the right to litigate the validity of the county's assessment being reserved. Subsequently, the petitioner having threatened to institute proceedings to enforce the county's assessment, the Bank brought its suit in the district court to enjoin collection.

The Bank by its bill in the district court seeks an injunction upon several grounds. We are of the opinion that none of these compels the trial judge to call a three-judge court under § 266.

The assessment in Pima County was made in the amount of the value of the Bank's real estate and personal property. It is therefore, says the Bank, impossible to tell whether the assessment is the valuation of the property, the proportion of the value of the common stock alone or that of the aggregate of the common and preferred. An assessment upon the property, it is alleged, is "void as unauthorized by the statutes of Arizona." If the valuation includes the preferred stock, the complaint alleges it is invalid because of the Act of March 20, 1936, exempting the preferred stock while owned by the Reconstruction Finance Corporation.[6] If the valuation is upon the common stock alone, it is said to be invalid (1) because the valuation is far beyond the actual value and therefore confiscatory and (2) because the valuation is discrimina-

---

[6] 49 Stat. 1185.

tory since the common stock in other banks is assessed at 75% of the value of common stock, surplus and undivided profits and other classes of property at sixty per cent of its actual value, while this valuation is on the basis of approximately twice the common stock, surplus and undivided profits of the bank and twice its actual value. It is further alleged that this excessive and discriminatory valuation violates R. S. § 5219 which limits the rate of taxation of national bank shares to that assessed "upon other moneyed capital in the hands of individual citizens . . . coming into competition with the business of national banks." It is prayed that action under these assessments for the reasons stated be enjoined as violative of the Constitution and laws of the United States and Arizona.

Section 266 lays down as one of the requirements for a three-judge court that the injunction against the officer of the state to restrain the enforcement, operation or execution of the state statute must be sought "upon the ground of the unconstitutionality of such statute."

In so far as it is alleged that the assessments are void because unauthorized by the Arizona statute, the injunction sought is obviously not upon the ground of the unconstitutionality of the state statute as tested by the Federal Constitution.

The allegations that the assessments should be enjoined because violative of the statute exempting preferred stock owned by the Reconstruction Finance Corporation and R. S. § 5219 depend upon no constitutional provision within the meaning of Judicial Code § 266. If such assessments are invalid, it is because they levy taxes upon property withdrawn from taxation by federal law [7] or in a manner forbidden by the National Banking Act.[8] The

---

[7] *Pittman* v. *Home Owners' Corp.*, 308 U. S. 21.

[8] R. S. § 5219; *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 668.

declaration of the supremacy clause [9] gives superiority to valid federal acts over conflicting state statutes but this superiority for present purposes involves merely the construction of an act of Congress, not the constitutionality of the state enactment. This was decided as to § 266 in *Ex parte Buder*,[10] and before that a similar result had been reached in *Lemke* v. *Farmers Grain Company* [11] in regard to a provision of the Judicial Code granting direct appeal to this Court in cases where the sole issue [12] was the unconstitutionality of a state statute.[13]

It is said, however, that the allegations of confiscation and discrimination in valuation of the common shares in comparison with the stock of other banks and other property show the injunction is sought upon the ground of the unconstitutionality of the statute. This point depends upon excessive valuation of the shares. The validity of the statute itself is not involved. Variations by assessors in valuations of like property, taxable under the same statute, sufficiently marked to be discriminatory under the Constitution or valuations so large as to be confiscatory cannot properly be said to be the basis for attack on the ground of the unconstitutionality of the statute. Such assessments, if made and if invalid, are so because of a wrong done by officers under the statute rather than because of the requirement of the statute itself.[14]

But it is said by the petitioner here that the last sentence of § 3071 requires this excessive and discrimina-

[9] Art. VI, cl. 2: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land . . ."

[10] 271 U. S. 461, 465–66.

[11] 258 U. S. 50, 52.

[12] *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 407.

[13] See *D. A. Beard Truck Line Co.* v. *Smith*, 12 F. Supp. 964.

[14] Cf. *Ex parte Williams*, 277 U. S. 267, 271; *Jett Bros. Co.* v. *Carrollton*, 252 U. S. 1, 5.

tory assessment. That sentence reads: "When a bank maintains branches or conducts business in more than one county, city or town, the assessed value of the capital stock shall be apportioned among the several counties, cities and towns in which the main office or such branches are maintained or business conducted, and the amount apportioned to each county, city or town shall not be less than the actual cash value of the real and personal property of such bank situated in such county, city or town." If this is interpreted as requiring that the apportionment of the value of the capital stock to each county must not be less than the tangible property in that county, the aggregate apportionment may be much larger than the assessed value of the stock. A greater assessment per share will occur if the total valuation is allocated to common shares only. If the valuation, reached under the formula by treating the preferred as capital stock, is allocated among the common shares, only, it would mean that the preferred was treated as stock for purposes of the valuation and disregarded for the assessment of individual shares. The argument of petitioner is that if the result, as he contends the Bank alleges, violates the Federal Constitution by discrimination of common shares as compared to shares of other banks without preferred stock or owners of other property, the statute violates it. Therefore, in effect, the attack on the constitutionality of the assessment is an attack on the constitutionality of the statute.

The contention of the Bank, however, is that the assessor misinterpreted the statute; that the objectionable aspect of the assessment is the attribution to the common of the whole amount instead of an apportionment to both preferred and common or the use of the preferred as capital stock in the state valuation formula. We are not now called upon to reach any conclusion upon the meaning of the Arizona tax statutes. If the trial court deter-

mines that the assessment complained of is made properly under the statute and that by the statute the assessment is to be prorated among the common shares, it would determine only a question of statutory construction. It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court,[15] and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court.[16] In such a case the attack is aimed at an allegedly erroneous administrative action.[17] Until the complainant in the district court attacks the constitutionality of the statute, the case does not require the convening of a three-judge court, any more than if the complaint did not seek an interlocutory injunction.[18] Where by an omission to attack the constitutionality of a state statute, its validity is admitted for the purposes of the bill, a determination by the trial court that the assessment accords with the statute would result in the refusal of the injunction and the dismissal of the bill. Jurisdiction, properly assumed, may be lost by the special court, when it appears that a prerequisite such as need for relief against state officers is lacking.[19] Even where the statute is attacked as unconstitutional, § 266 is inapplicable unless the action complained of is directly attributable to the statute.[20] There is no indication that Congress sought by § 266 to have every attack on the constitutionality of a state statute determined by a three-judge court.

[15] *Stratton* v. *St. Louis Southwestern Ry.*, 282 U. S. 10.
[16] *Ex parte Hobbs*, 280 U. S. 168.
[17] *Ex parte Williams, supra.*
[18] *Stratton* v. *St. Louis Southwestern Ry.*, 282 U. S. 10, 15.
[19] *Oklahoma Gas Co.* v. *Packing Co.*, 292 U. S. 386, 391.
[20] *Ex parte Collins*, 277 U. S. 565, 567, 569.

It sought such a bench only to avoid precipitate determinations on constitutionality on motions for interlocutory injunctions.

As the foregoing ground adequately disposes of the petition for mandamus, we do not discuss the other reasons for refusal urged by the Bank.

The motion to file the petition for mandamus is

*Denied.*