**KEYES v. MADSEN et al.**
No. 9969.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 13, 1949.

Decided Dec. 16, 1949.

Writ of Certiorari Denied April 3, 1950.
See 70 S.Ct. 628.

Messrs. James M. Earnest and W. Gwynn Gardiner, Washington, D. C., for appellant.

Mr. Chester H. Gray, Principal Assistant Corporation Counsel, District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, District of Columbia, and Milton D. Korman, Assistant Corporation Counsel, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, CLARK and WILBUR K. MILLER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellant, Minnie Keyes, the owner of eleven attached houses in the southwest section of the District of Columbia, was notified in November, 1944, by the local Board for the Condemnation of Insanitary Buildings that her houses were in such insanitary condition as to endanger the health and lives of their occupants and persons in the vicinity. A specification of the defective conditions accompanied the notice. She was directed to show cause within not more than ten days why the buildings should not be condemned, and was advised that she was entitled to a hearing before the Board upon written request therefor made within the time to show cause. The appellant did not request a hearing and did not show any cause why the houses should not be condemned.

On January 2, 1945, the Board advised the appellant that a condemnation order had been entered. Three weeks later she applied for an extension of time within which to make repairs and on January 27, 1945, the Board granted an extension of one month. Thereupon appellant did make certain repairs, after which the Board inspected the houses and informed her the insanitary conditions had not been satisfactorily remedied and that the condemnation order would stand.

On March 22, 1946, the appellant sued the Board in the United States District Court for the District of Columbia, praying the court to adjudge the statute under which the Board had proceeded [1] to be violative of the Fifth Amendment of the Constitution, as applied to her property; to hold the condemnation order null and void and to require the Board to cancel it. This action was dismissed on motion of the defendant Board and no appeal was taken.

Nothing more was done until February 27, 1947, when the appellees informed appellant they had personally inspected the premises on January 21, 1947, had found that repairs had not been adequately made, and that the houses were still so insanitary as to be unfit for human habitation. Following this, on April 9, 1947, the appellant again sued the Board alleging she had proceeded with due diligence to make all necessary repairs, that the houses were safe for human occupancy and that the statute as applied to her violated the Fifth Amendment. The Board's answer denied the allegations of the complaint that adequate

---

1. Title 5, § 601 et seq., as amended, D.C.Code 1940.

repairs had been made and denied that the houses were sound, sanitary and safe for human habitation, and further relied upon the dismissal of the former action in the District Court as res judicata.

The case was tried in the District Court on March 9, 1948. At the appellant's request, the trial judge personally inspected the premises, accompanied by counsel, and then heard evidence. Elaborate findings of fact were made by the court describing in detail the condition of the buildings disclosed by the evidence and the trial judge's personal inspection. The conclusion of law was as follows: "9. The refusal by the defendants to lift the order of condemnation of the buildings described in Finding Number 1 was and is entirely justified. The defendants would be derelict in their duty to have done otherwise." The owner of the houses has appealed from the judgment denying the relief which she had sought.

The appellant alleged in her complaint that the statute was being unconstitutionally applied to her and in her argument here she attacks the statute as being unconstitutional on its face. The plea of unconstitutional application was taken from the case by the pretrial judge as though he had sustained a demurrer to it, as will be seen from the following portion of the pretrial order: "However, the Pretrial Judge having before him the complaint and answer is of the opinion that the allegation[s] of the [complaint and] answer taken together do not establish the case of unconstitutionality of the Statute as applied, and that issue is therefore taken out of the case, leaving to the Trial Court to determine whether or not there was such a sufficient compliance with the order of the Board as to make its refusal to lift its order of condemnation unreasonable and arbitrary."

We think this was error because the complaint charged that at the time of condemnation and thereafter the buildings were sound, in good condition, and not insanitary in any respect; that in condemning them the Board acted under an improper motive and not in an effort to enforce the statute. These allegations amount to a charge of

deprivation of property without due process of law. The answer's denial raised an issue of fact as to whether the houses were insanitary to the extent which the statute says justifies condemnation. So in respect to its charge that the statute had been unconstitutionally applied, the complaint should not have been treated as though it were bad on demurrer. The constitutional question so raised depended, however, upon the answer to the factual question as to the condition of the buildings.

In our view, the error in the pretrial order to which we have referred was immaterial because the trial court's emphatic decision of the factual issue against the appellant was supported by substantial evidence. Since that court's finding that the condition of the houses justified the Board in exercising the authority to condemn conferred by the statute must therefore be upheld, it follows that the order of condemnation did not deprive the appellant of her property without due process of law.

Instead of contending before us that the statute was being unconstitutionally applied to her property, as she had alleged in the complaint, the appellant took a different tack by arguing, for the first time, that the statute is unconstitutional on its face because Congress, in delegating to the Board the power to condemn buildings so insanitary as to endanger the lives of their occupants or of persons living in the vicinity, did not establish standards for the guidance of the Board. Having failed to present this plea to the District Court, the appellant cannot urge it here. The general rule is that such a question, if not raised in the trial court, will not be considered on appeal. Wabash Ry. Co. v. City of St. Louis, 8 Cir., 1933, 64 F.2d 921, 929, certiorari denied 1933, 290 U.S. 668, 54 S.Ct. 88, 78 L.Ed. 577; Southwestern Oil Co. v. State of Texas, 1910, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688; Chesapeake & Ohio Ry. Co. v. McDonald, 1909, 214 U.S. 191, 29 S.Ct. 546, 53 L.Ed. 963.

Moreover, if the plea were available it could not be sustained. We regard the statute which created the Board for the Condemnation of Insanitary Buildings and

defined its jurisdiction and authority[2] as being sufficiently definite and certain to guide the Board and to inform property owners of conditions which would lead to condemnation. The act does not violate the Fifth Amendment.

We do not agree with the suggestion, made during oral argument before us, that Title 28, U.S.C.A., § 2282, required the case to be heard and determined by a district court of three judges. The section requires a three-judge court to consider an application for "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States * * *." We have already noted that the complaint did not challenge the constitutionality of the statute but alleged merely that the act of the Board amounted to deprivation of property without due process. That being true, a three-judge court was not necessary. Case v. Bowles, 1946, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552; Ex parte Bransford, 1940, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249; Ex parte Hobbs, 1929, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353; Ex parte Williams, 1928, 277 U.S. 267, 48 S.Ct. 523, 72 L.Ed. 877.

For the same reason § 2403 of Title 28 did not require the District Court to certify the case to the Attorney General as one involving the constitutionality of an act affecting the public interest, with subsequent permission to the United States to intervene. Moreover, even if the constitutionality of the act on its face had been drawn in question, § 2403 would not be operative because the statute in question applies only in the District of Columbia and concerns a matter of mere local interest. *See* footnote 3 in Hamilton National Bank of Wash. v. District of Columbia, 1949, 85 U.S.App.D.C. ——, 176 F.2d 624.

The appellant further contends that "The Board for the Condemnation of Insanitary Buildings, acting in a quasijudicial capacity when conducting a hearing, fails to provide a procedure commensurate with the requirements of due process." Her argument in this respect seems to us to lack substance.

Our conclusion is that in this case a constitutional act was constitutionally applied.

Affirmed.

2. The pertinent portion of Title 5. § 601, D.C.Code 1940, 34 Stat. 157, ch. 2073, § 1, is: "* * * to have jurisdiction and authority to examine into the sanitary condition of all buildings in said District, to condemn those buildings which are in such insanitary condition as to endanger the health or lives of the occupants thereof or of persons living in the vicinity, and to cause all buildings to be put into sanitary condition or to be vacated, demolished, and removed, as may be required by the provisions of this chapter."