Mrs. Victoria Jackson GRAY et al.,
Plaintiffs,

v.

The STATE OF MISSISSIPPI et al.,
Defendants.

Civ. A. No. GC 6437.

United States District Court
N. D. Mississippi,
Greenville Division.

Aug. 24, 1964.

L. H. Rosenthal, Jackson, Miss., Morton Stavis, Neward, N. J., Benjamin E. Smith and Bruce C. Waltzer, Smith, Waltzer, Jones & Peebles, New Orleans, La., Kunstler, Kunstler & Kinoy, Melvin L. Wulf, New York City, for plaintiffs.

Joe T. Patterson, Atty. Gen., State of Mississippi, Will S. Wells, Asst. Atty. Gen., State of Mississippi, William Allain, Asst. Atty. Gen., State of Mississippi, Jackson, Miss., for defendants.

Before BELL, Circuit Judge, and COX and CLAYTON, District Judges.

PER CURIAM:

The sole question to be decided by this three-judge district court is the constitutionality on its face of the Mississippi unpledged elector statute, § 3107, Mississippi Code of 1942, as amended by Chapter 32 of the Extraordinary Session of the Mississippi Legislature of 1963.[1] The parties to this action have stipulated that upon decision by this court of the constitutionality of this statute, an order may be entered dissolving the three-judge court, thus leaving all other matters set forth in the complaint for decision by the United States District Court for the Northern District of Mississippi in regular course. An order to this effect is being entered.

The relevant portions of the statute under consideration are set forth in full in the margin.[2] Basically, it provides a

---

[1]. In their complaint challenging the validity of this statute, plaintiffs joined a separate claim alleging discriminatory administration of the Mississippi voter registration laws. It is settled that a suit seeking to enjoin the discriminatory administration of a statute is not one where an injunction is sought "upon the ground of the unconstitutionality of such statute" within 28 U.S.C.A. § 2281, and that consequently a three-judge panel is not required to hear it. Aaron v. Cooper, 8 Cir., 1958, 261 F.2d 97; Sealy v. Department of Public Instruction, 3 Cir., 1958, 252 F.2d 898; cf. Ex parte Bransford, 1940, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249.

[2]. The Act first provides for holding state political party conventions, and then continues as follows:

"Section 3. At said state convention, upon motion supported by ten per cent (10%) of the membership of said state convention, a slate of electors composed of the number of electors allotted to this state, which said electors announce a clearly expressed design and purpose to support the candidates for president and vice-president of the national political party with which the said party of this state has had an affiliation and identity of purpose heretofore, shall be designated and selected for a place upon the primary election ballot

method whereby the state political party conventions may select two slates of presidential electors, one slate pledged to support the nominee of the national political party, and one slate unpledged. The Act then provides for a primary election between these two slates of electors, to be held on the first Tuesday in September in the year of the general presidential election. The slate victorious in the September primary is placed on the ballot in the general election as the electors of the particular state political party involved, and no other group of electors may appear on the general election ballot as electors representing that political party. Thus, the effect of § 3107 is that should an unpledged slate win, for example, the Democratic party primary, this slate and only this slate will appear on the November ballot under the designation "Democratic Party Electors."[3] However, § 3107 expressly provides that nothing therein shall prohibit a slate of electors pledged to support the national

party candidate from running on the general election ballot, and another section of the Mississippi Code, § 3260, enables such a slate to get on the ballot upon the petition of 1000 voters. Consequently, Mississippi voters are not denied the opportunity to vote for electors pledged to support a national party nominee, but they are denied the opportunity to vote for a pledged slate running under the national party label.

■■ Plaintiffs in this suit, members of the Mississippi Democratic Party, contend first that they have a constitutional right under the Fourteenth Amendment to vote for pledged presidential electors running under the Democratic Party label; and second, that in any event § 3107 debases their votes in violation of the equal protection clause of that amendment. We are unable to accept either contention, and hold that the Mississippi unpledged elector statute offends no provision of the United States Constitution.

to be held as herein provided.

"Also upon motion supported by ten per cent (10%) of the membership of the state convention, a group of electors equal to the number of electors to which this state is entitled, which said electors announce a clearly expressed design and purpose not to support the candidates of the political party to which the said party of this state has had an affiliation and identity of purpose heretofore, or to be freed from any obligation to so do, shall be designated and selected for a place upon the ballot for the primary election to be held as herein provided.

"Section 4. A primary election shall be held the first Tuesday in September in the year of the general election for president and vice-president, and the group of electors receiving the most votes at said election shall be placed upon the ballot in said general election as the electors of the said political party in this state, and no other group of electors shall be placed upon the said ballot as such electors of the said political party in this state.

"Unless the electors last above mentioned certify in writing to the Secretary of State at least thirty (30) days before the primary election herein pro-

vided for the names of persons for president and vice-president for whom they have the intent and purpose of supporting with their ballot if elected, then said electors shall be placed on the primary election ballot and designated 'Unpledged'. If no selection of persons is made before the primary provided for in this Act, or by notifying the Secretary of State thirty (30) days before the general election of such selection, then the said electors shall go on the general election ballot as 'Unpledged'.

"Section 5. Nothing in this Act shall be construed to deny or prescribe the right of any qualified person to run for the office of elector in this state, provided he or she qualifies in the manner herein provided or in any other manner provided for by law. Furthermore, any elector or group of electors so qualifying may have it signified upon the general election ballot as to whom they intend to vote for, or are pledged to vote for in the election for president and vice-president.".

3. § 3107 itself prohibits the Democratic Party from running any slate other than the slate victorious in the primary, and § 3107-01 prevents any other party or group from using the name "Democratic."

Article II, § 1, clause 2 of the Constitution provides:

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress. * * * "

It is clear from this language and the cases interpreting it that the states are given considerable freedom in the selection of presidential electors. In the past, various methods have been employed, including appointment by the state legislature. McPherson v. Blacker, 1892, 146 U.S. 1, 28–31, 13 S.Ct. 3, 36 L.Ed. 869. In the McPherson case, the Supreme Court sustained a Michigan system under which one elector was elected from each Congressional district, and two additional electors elected from the state at large.

■ Nevertheless, the plaintiffs contend that because of the longstanding practice in most states, the Fourteenth Amendment now requires all states to provide voters with an opportunity to vote for pledged electors running under a national party label. We cannot agree that the Constitution imposes any such requirement. The prevailing practice among the states may in some situations add meaning to the general concepts of the Fourteenth Amendment, cf. Mapp v. Ohio, 1961, 367 U.S. 643, 651–652, 81 S.Ct. 1684, 6 L.Ed.2d 1081, but we see

no warrant for recognition of the right contended for here. Nor have we found any authority to support imposing such a drastic limitation on the unqualified language of Article II, § 1.[4] We hold that the denial to a voter of the opportunity of voting for pledged electors running under the banner of a national political party offends no constitutional right.

■ The plaintiffs base a second argument on the equal protection clause of the Fourteenth Amendment. They argue that if a national party candidate is denied the use of the party label, he is placed at a disadvantage in the November election. As a result, the votes of plaintiffs and others who desire to vote for such candidate are said to be "debased" and less "effective" in violation of the equal protection clause. However, the statute applies uniformly to all members of the electorate and the one man-one vote principle is in no way violated. On its face, § 3107 does not discriminate among voters or between political parties. Consequently, we are unable to discern any debasement of the plaintiffs' votes in the sense condemned by the equal protection clause.

For the foregoing reasons, we reject the attack made here on the constitutionality of § 3107, as amended. The prayer for injunctive relief attendant thereto therefore must be, and it is denied.

4. Ray v. Blair, 1952, 343 U.S. 214, 72 S. Ct. 654, 96 L.Ed. 894, relied on by plaintiffs, held only that the Alabama Democratic Party could constitutionally require candidates for presidential elector in the Democractic primary to pledge their support to the national Democratic candidate. The requirement was felt to be a reasonable provision designed to prevent invasion of the party by electors who would not support the party nominee. The contra argument was that the Twelfth Amendment required that each elector be free to vote his choice. Plaintiffs also lean heavily on footnote 8 of Gray v. Sanders, 1963, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821. Defendants in that case had pointed to the electoral college as an analogy to support the constitutionality of the Georgia county unit system. The court in footnote 8 rejected the analogy, stating that the political philosophy represented by the electoral college "belongs to a bygone day, and should not be considered in determining what [the Equal Protection Clause] requires in statewide elections." Neither these cases nor any others we have discovered lend the remotest support to an alleged constitutional right to have electors run under a party label.