Walter JOHNSON et al., Plaintiffs,

v.

John J. DURANTE, in his official capacity as County Clerk of Queens County, and John F. Kenna, in his capacity as First Deputy County Clerk of Queens County, Defendants.

No. 73 C 1159.

United States District Court,
E. D. New York.

Jan. 2, 1975.

William Gallagher, The Legal Aid Society by Robert Hermann and Donald H. Zeigler, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York by Robert S. Hammer, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This class action for declaratory and injunctive relief, brought under 42 U.S. C. § 1983 and 28 U.S.C. §§ 1343(3) and 2201, challenges defendants' actions, under color of State law, in establishing a yearly list of qualified grand jurors in Queens County, New York, that is allegedly not representative by sex, occupation, locality and race of the county as a

**150**

whole, or a proportionate reflection of the classes plaintiffs claim to represent.

## I.

Defendants have moved for summary judgment dismissing the complaint pursuant to F.R.Civ.P. 56(b), on the grounds that (1) the State legal framework for the impaneling of grand jurors is constitutional; (2) defendants do not purposefully and invidiously discriminate against any specific classes of citizens in an attempt to bar their members from grand jury service; and (3) plaintiffs lack standing to sue.

Plaintiffs argue that (1) the amended complaint and the affidavits reveal that they have presented a *prima facie* case of invidious discrimination; (2) the burden is on the defendants to rebut a presumption of unconstitutional action; (3) there are genuine issues of material fact which defendants have failed to resolve in their answer and affidavits; and (4) they do have standing to sue. Plaintiffs also add that summary judgment should be denied on the present inadequate record.

■■ Decision of the present motion has been held in abeyance pursuant to this court's memorandum and order of February 28, 1974, pending resolution of issues raised concerning the referral of this case to a three-judge court. Subsequently, plaintiffs filed an amended complaint which the court has allowed, and which obviates the problems presented by the original complaint and any need for convening a three-judge court. See February 28, 1974 memorandum at 3–5.[1]

Consideration of the motion was further deferred when the parties brought to the court's attention the passage by the New York State legislature of Senate Bill 8254–B, an act to repeal articles 16–18 of the New York Judiciary Law, McKinney's Consol.Laws, c. 30, and to insert a new article 16 "in relation to the selection of jurors." Plaintiffs conceded that had this bill become law, their case would have either become instantly moot or required a complete reevaluation. The bill, however, was subsequently disapproved by Governor Wilson, thus leaving the case and the summary judgment issues in *status quo ante*.

■ The lapse of time has not been entirely fruitless, for defendants' summary judgment motion may now be viewed in light of Quadra v. Superior Court, 378 F.Supp. 605 (N.D.Cal.1974), a case involving a similar attack on the somewhat dissimilar grand jury selection process of the City and County of San Francisco. In a meticulous and exhaustive opinion denying cross-motions for summary judgment in that case, Judge Renfrew fully reviewed the pertinent authorities in this area. This court finds no occasion to repeat or attempt to improve on that discussion, except to agree in summary fashion that, absent evidence of intentional discrimination, a *prima facie* case neverthe-

1. To the extent declaratory relief is sought, no three-judge court is required. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) ; Flemming v. Nestor, 363 U.S. 603, 606–607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Beyond that, the present request for injunctive relief avoids any suggestion that the statutes empowering the county officials to act are unconstitutional, and instead is directed toward redressing discriminatory application of constitutionally valid State law. Under such circumstances, no three-judge court is required. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941) ; Ex parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940). See Turner v.

Fouche, 396 U.S. 346, 353–354, 90 S.Ct. 532, 24 L.Ed.2d 567 n. 10 (1970) ; Quadra v. Superior Court, 378 F.Supp. 605, 612–613 (N. D.Cal.1974).

This renders it unnecessary to consider defendants' contention that no three-judge court is required because article 17 of the New York Judiciary Law, being confined to cities having a population of one million or more, is not of "general and statewide application," citing Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967) ; Boraas v. Village of Belle Terre, 476 F.2d 806, 811, (2 Cir. 1973), rev'd on other grounds, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

less exists under 42 U.S.C. § 1983 when plaintiff has shown (1) that substantial disparities in representation on the grand jury exist between appropriate identifiable groups and the entire population of grand jury eligibles in the County, Quadra v. Superior Court, *supra,* 378 F.Supp. at 613–614; see Hernandez v. Texas, 347 U.S. 475, 478, 74 S.Ct. 667, 98 L.Ed. 866 (1954); and (2) that there is either a clear and easy opportunity for the defendants to discriminate or a demonstration that, at least in part, the disparity originates at a point in the selection process where the defendants invoked subjective judgments rather than objective criteria. Turner v. Fouche, 396 U.S. 346, 360, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). See Quadra v. Superior Court, *supra,* 378 F.Supp. at 614–615, and other cases cited therein.

■ Once such a *prima facie* case has been established, as Judge Renfrew so succinctly stated:

"[I]t falls upon the responsible officials to explain the statistical disparities by demonstrating that permissible, neutral selection criteria and methods have caused the disparities. This is a shift in the burden of proof. . . . Possible explanations may be in terms of the use of objective, impartial educational qualifications or other neutral qualifications and exemptions. The statistical basis for the challenge could also be attacked, either by a showing of inaccurate or incomplete data, or by demonstrating that the actual disparity could have resulted from accident or chance.

. . .

"The Supreme Court has indicated what explanations are insufficient to rebut a prima facie case of grand-jury discrimination. '[A]ffirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion.' Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 543 (1972). Testimony of those administering the selection process 'that they included or excluded no one because of race did not suffice to overcome . . . [a] prima facie case. Turner v. Fouche, 396 U.S. 346, 361, 90 S.Ct. 532, 540, 24 L.Ed.2d 567, 579 (1970). . . . A selection process that is consistent with local traditions and 'the general thinking of the community' is not thereby insulated from constitutional challenge. . . . Nor can a sytem based upon the selectors' personal acquaintances be justified by the fact that those selectors knew none of the excluded group who could qualify in the absence of evidence of compliance with the selectors' 'duty to familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color.' Cassell v. Texas, 339 U.S. 282, 289, 70 S.Ct. 629, 633, 94 L.Ed. 839, 848 (1950) (plurality opinion of Reed, J.) . . . . Clearly, generalities in rebuttal will not suffice; specific factual or legal explanations are necessary." *Id.* at 615–616 (footnotes and some citations omitted).

■■ In this case plaintiffs do not seek summary judgment. The court does not find it necessary, therefore, to discuss the substance of plaintiffs' claims in detail, for it is satisfied that, taking the factual material presented in the light most favorable to plaintiffs, as it must on defendants' motion, Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970); Quadra v. Superior Court, *supra,* 378 F.Supp. at 623–624; Rule 56(c), F.R.Civ.P., defendants have wholly failed, under the above legal standards, to demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

Plaintiffs' complaint alleges with supporting detail that there are several points in the grand jury selection process that provide opportunities for discrimination, Amended Complaint, ¶¶ 23–37, and that in making the selection determination, defendants "abuse the discretion granted them by law by mak-

ing determinations based on prejudice, idiosyncracy and caprice." Amended Complaint, ¶ 22. Defendants' opposing affidavit of the defendant Kenna asserts numerous factual explanations or justifications for the alleged disparities. Such evidence only underscores the fact that there are controverted material facts to be decided by the trier of fact. See Quadra v. Superior Court, *supra*, 378 F.Supp. at 625.

In their motion defendants do not attack plaintiffs' allegations of distinct, identifiable subgroups of the Queens County grand jury eligibles, or of the facts of disparity of representation which plaintiffs must demonstrate at trial. Accordingly, the court expresses no view on this aspect of plaintiffs' case at this time. More detailed consideration of the appropriate subgroups may be appropriate in connection with the issue of whether this case warrants class action status (discussed *infra*).

Finally, defendants do attack plaintiffs' standing to sue in connection with the summary judgment motion. That issue, raised as an affirmative defense in the answer rather than by motion under Rule 12(b), F.R.Civ.P., while not frivolous, may well be foreclosed against defendants under both traditional standing principles and what might be considered controlling language in Carter v. Jury Commission, 396 U.S. 320, 329–330, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970).

However, inquiry into the nature of plaintiffs' interests and injuries to determine standing to sue is also somewhat related to the propriety of class action treatment of this case. Accordingly, consideration of that issue, even though jurisdictional, is deferred until the court is faced with the class action question directly. Under Rule 23(c)(1), F.R.Civ.P., a motion concerning class

action treatment by either side should be made as soon as practicable, although it is not essential that it precede all discovery in the case.

For the present, summary judgment is clearly inappropriate and further discovery is essential for a proper resolution of this case. At a minimum, plaintiffs ought to be allowed to further investigate the extent to which racial and other disparities exist (and become progressively greater) between the composition of the adult population of Queens County and of the grand jury at each stage of the selection process. Similarly, plaintiffs must be given a reasonable opportunity to discover the causes of such disparities, if they do exist. If the cause is purposeful and intentional invidious discrimination, there may well be an equal protection claim.[2] Absent such proof, plaintiffs may still be able, as discussed *supra*, to make a *prima facie* case which shifts the burden of proof for explanation of the disparities to defendants.

Plaintiffs have made an initial attempt to keep this inquiry within bounds by focusing on the 1972 Queens County grand jury rolls. Without passing on the question of the sufficiency of proof to be derived from the 1972 records, the court deems this reasonably restricted inquiry to be unobjectionable, insofar as it pertains to the factual issues raised above.

## II.

Defendants have also moved, pursuant to F.R.Civ.P. 26(c), for a protective order quashing plaintiffs' notice- to produce documents relating to the 1972 Queens County grand jury rolls. The court adjourned that motion pending argument of the motion for summary judgment. In view of the foregoing, the court will deny the motion without prej-

2. Carter v. Jury Commission, 396 U.S. 320, 329–330, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); Turner v. Fouche, *supra*. See United States ex rel. Chestnut v. Criminal Court of the City of New York, 442 F.2d 611, 617 (2 Cir.), cert. denied, 404 U.S. 856, 92 S.Ct. 111, 30 L.Ed.2d 98 (1971) (dictum, where petitioners had failed to allege such discrimination in attacking the grand jury selection procedure in New York County); People v. Cender, 67 Misc.2d 129, 323 N.Y. S.2d 807 (Sup.Ct., Queens County 1971).

udice to renewal if the parties are unable to reach an agreement for reasonable discovery consistent with the above views. The parties are reminded that full compliance with General Rule 9(f) of this court will be expected before the court will intervene regarding questions as to the scope of discovery.

Accordingly, defendants' motion for summary judgment is denied, and defendants' previously adjourned motion for a protective order is denied at this time without prejudice.

So ordered.